UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

CYNTHIA MAHON and GARY
MARKELY,

No. 2:03-CV-1763-MCE-DAD

       Plaintiffs,

  v.

MEMORANDUM AND ORDER

CROWN EQUIPMENT CORPORATION,
dba CROWN LIFT TRUCKS, and
DOES 1 through 50, inclusive,

       Defendants.

----oo0oo----

This lawsuit arises out of injuries sustained by Plaintiff Cynthia Mahon ("Plaintiff") while she was operating a stand-up forklift that was designed and manufactured by Defendant Crown Equipment Corporation ("Crown"). Plaintiff claims, *inter alia*, that Crown is liable for punitive damages for failing to place doors on its forklifts, allegedly making them defective and dangerous to consumers. Crown argues that placing doors on forklifts increases the risk of more serious injury and therefore its decision to not install doors cannot, as a matter of law, provide the requisite basis for a jury award of punitive damages.

1

1  Now before this Court is Crown's Motion for Partial Summary

2  Judgment for Plaintiff's punitive damages claim.[1]

3

4                          **BACKGROUND**

5

6      On August 30, 2002, Plaintiff was operating a Crown RC 3000

7  stand-up forklift in the Costco warehouse located in Chico,

8  California.  Plaintiff was an experienced forklift operator and

9  had over one year of experience driving the RC 3000.  While

10 traveling in reverse with the forks trailing, Plaintiff attempted

11 to slow the forklift by plugging the machine.[2]  The forklift

12 failed to respond to the control input, prompting Plaintiff to

13 engage the foot brake by lifting her left foot, leaving her off-

14 balance.[3]  Plaintiff's left foot came out of the operator

15 compartment and was subsequently crushed between a parked

16 forklift and her moving forklift.  Plaintiff sustained serious

17 injuries from this accident and to date has had four surgeries on

18 her foot.

19 ///

20 _____

21     [1] Because oral argument will not be of material assistance,
   the Court orders this matter submitted on the briefs.  E.D. Cal.
22 Local Rule 78-230(h).

23     [2] "Plugging" is a common practice to slow, stop, or reverse
   a stand-up forklift.  In plugging the machine, the operator moves
24 the travel controller in the opposite direction of travel, which
   in turn reverses the current to the electrical motor.  Dunlap
25 Dep. 71:23-72:5.  The operator manual for the RC 3000 recommends
   plugging as one method for slowing or stopping the forklift.
26 Def.'s Ex. 2 at 26.

27     [3] Per the RC 3000 operator manual, the foot brake is to be
   used in an emergency, on ramps, or in busy areas.  Def.'s Ex. 2
28 at 27.

1  Plaintiff brought suit against Crown seeking compensatory and

2  punitive damages.  Crown now seeks partial summary judgment on

3  Plaintiff's claim for punitive damages.

4  Crown tracks incidents, injuries, and fatalities for its RC

5  and RR model stand-up forklifts.  According to a company accident

6  summary report, from 1977 and 2001 inclusive, riders of these

7  forklifts sustained 395 serious injuries to the lower left leg.

8  Pl.'s Ex. 8 at 1.  In 2002, the year in which Plaintiff was

9  injured, an additional 25 such injuries were reported.  Id.  In

10 the 1977 to 2001 period, 913 serious accidents occurred with

11 2,426 accidents total.  Id. at 3.

12 Regarding serious or fatal injuries that Crown alleges would

13 occur if it placed doors on its forklifts, no such accidents have

14 been reported with the machines sold to Ford or K-Mart that were

15 attributed to the door.  Dunlap Dep. 33:23-34:1, 34:23-35:16.[4]

16 Conversely, as of January 2005, eighteen deaths have occurred in

17 "off dock events" and one in a "tipover" incident.  Pl.'s Ex. 5.

18 All of these deaths occurred in incidents involving forklifts

19 without doors.  Id.  Further, Crown began designing doors in the

20 1970s, as equipment for both new forklifts and for retrofitting

21 existing forklifts.  Dunlap Dep. 99:6-14.  As of January 2004,

22 Crown has produced 686 stand-up forklifts with doors.  Ziernicki

23 Decl. at 11 ¶ 8.  With respect to feasibility, the cost of adding

24 a door to the lift is not prohibitive.  In 1992, the price of a

25 forklift sold to K-Mart without the door option was $21,246, only

26

27    [4] Dan L. Dunlap monitors the safety and design of the lift
   trucks that have been released for production at Crown.  Dunlap
28 Dep. 7:21-8:1.

1 $544 less than the door-equipped price.  Id. at 11 ¶ 9.  The base

2 price of the forklift that was operated by Plaintiff at the time

3 of her accident was $21,160.  Id. at 11 ¶ 10.

4

5 **STANDARD**

6

7 　　The Federal Rules of Civil Procedure provide for summary

8 judgment when "the pleadings, depositions, answers to

9 interrogatories, and admissions on file, together with

10 affidavits, if any, show that there is no genuine issue as to any

11 material fact and that the moving party is entitled to a judgment

12 as a matter of law."  Fed. R. Civ. P. 56(c).  One of the

13 principal purposes of Rule 56 is to dispose of factually

14 unsupported claims or defenses.  Celotex Corp. v. Catrett, 477

15 U.S. 317, 325 (1986).

16　　　　Under summary judgment practice, the moving party
　　　　always bears the initial responsibility of informing
17　　　　the district court of the basis for its motion, and
　　　　identifying those portions of 'the pleadings,
18　　　　depositions, answers to interrogatories, and admissions
　　　　on file together with the affidavits, if any,' which it
19　　　　believes demonstrate the absence of a genuine issue of
　　　　material fact.

20

21 Id., 477 U.S. at 323(quoting Rule 56(c)).

22 　　Rule 56 also allows a court to grant summary adjudication on

23 part of a claim or defense.  See Fed. R. Civ. P. 56(b) ("A party

24 against whom a claim ... is asserted ... may, at any time, move

25 ... for a summary judgment in the party's favor as to all or any

26 part thereof.); see also Allstate Ins. Co. v. Madan, 889 F. Supp.

27 374, 378-79 (C.D. Cal. 1995); France Stone Co., Inc. v. Charter

28 Township of Monroe, 790 F. Supp. 707, 710 (E.D. Mich. 1992).

4

1  The standard that applies to a motion for summary adjudication is
2  the same as that which applies to a motion for summary judgment.
3  See Fed. R. Civ. P. 56(a), 56(c); Mora v. ChemTronics, 16
4  F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998).  If the moving party
5  meets its initial responsibility, the burden then shifts to the
6  opposing party to establish that a genuine issue as to any
7  material fact actually does exist.  Matsushita Elec. Indus. Co.
8  v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986); First Nat'l
9  Bank v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).
10       In attempting to establish the existence of this factual
11  dispute, the opposing party must tender evidence of specific
12  facts based on personal knowledge in the form of affidavits,
13  and/or admissible discovery material, in support of its
14  contention that the dispute exists.  Fed. R. Civ. P. 56(e).  The
15  opposing party must demonstrate that the fact in contention is
16  both material and genuine.  It must be shown that the fact might
17  affect the outcome of the suit under the governing law and that
18  it provides a basis for a reasonable jury to return a verdict for
19  the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S.
20  242, 248, 251-52(1986); Owens v. Local No. 169, Assoc. of Western
21  Pulp and Paper Workers, 971 F.2d 347, 355 (9th Cir. 1987).
22  Stated another way, the question is whether there is any evidence
23  "upon which a jury could properly proceed to find a verdict for
24  the party producing it, upon whom the *onus* of proof is imposed."
25  Anderson, 477 U.S. at 251 (quoting Improvement Co. v. Munson, 14
26  Wall. 442, 448, 20 L.Ed. 867 (1872)).
27  ///
28  ///

1  In resolving a summary judgment motion, the evidence of the

2  opposing party is to be believed, and all reasonable inferences

3  that may be drawn from the facts placed before the court must be

4  drawn in favor of the opposing party.  <u>Anderson</u>, 477 U.S. at 255.

5

6                               **ANALYSIS**

7

8      To recover punitive damages, California law requires that a

9  plaintiff prove by "clear and convincing evidence that the

10 defendant has been guilty of oppression, fraud, or malice."  Cal.

11 Civ. Code § 3294(a).  "'Malice' means conduct which is intended

12 by the defendant to cause injury to the plaintiff or despicable

13 conduct which is carried on by the defendant with a willful and

14 conscious disregard of the rights or safety of others."  <u>Id</u>.

15 § 3294(c)(1).  Malice includes "conduct evincing 'a conscious

16 disregard of the probability that the actor's conduct will result

17 in injury to others.'"  <u>Grimshaw v. Ford Motor Co.</u>, 119 Cal. App.

18 3d 757, 808 (1981).  Further, "[m]arketing a product that is

19 known to be defective and dangerous to consumers supports an

20 inference of malice for purposes of punitive damages."  <u>Karlsson</u>

21 <u>v. Ford Motor Co.</u>, 140 Cal. App. 4th 1202, 1230 (2006).

22      The above-recited facts provide a sufficient basis upon

23 which a reasonable jury might find clear and convincing evidence

24 of malice to support an award of punitive damages.  The facts

25 provide a genuine question of material fact as to whether Crown

26 consciously disregarded the probability that its failure to place

27 doors on its forklifts would result in injury to others.

28 ///

1  Crown's own accident reports showed that lower left leg injuries
2  were occurring and that forklift doors may have prevented these
3  injuries.

4      The Ninth Circuit case of <u>McEuin v. Crown Equipment</u>
5  <u>Corporation</u> also supports this Court's decision.  328 F.3d 1029
6  (2003).  The facts in <u>McEuin</u> are strikingly similar to those in
7  this proceeding.  In that case, William McEuin was operating a
8  Crown RC forklift that was not fitted with a door.  <u>Id</u>. at 1030-
9  31.  Like Plaintiff here, he was traveling in a "forks trailing"
10  direction and lost his balance, extending his left leg outside
11  the operator's cabin.  <u>Id</u>. at 1031.  McEuin's theory of liability
12  was that the forklift "should have included a door in order to
13  prevent accidents such as his from occurring."  <u>Id</u>.  He based his
14  punitive damages argument on, *inter alia,* the allegation that
15  Crown refused to place doors on its forklifts "to prevent
16  potential plaintiffs from inferring that Crown conceded that the
17  absence of a door was a design defect."  <u>Id</u>.  The jury found that
18  the forklift design was "dangerously defective," and awarded
19  McEuin $1,250,000 in punitive damages, in addition to
20  compensatory damages.  <u>Id</u>. at 1032.

21      In upholding the award of punitive damages, the Ninth
22  Circuit noted that McEuin had presented evidence that "Crown was
23  aware of numerous collision-based accidents involving 30RC
24  forklifts" over several years and responded by "maintaining its
25  open-ended design in order to preclude an inference" by claimants
26  in future cases.  <u>Id</u>. at 1036.  Crown argued before trial that
27  the military specifications calling for "unobstructed egress"
28  directed its door-free design.  <u>See</u> <u>Id</u>. at 1031-1034.

7

1  The Ninth Circuit found that the district court's exclusion of

2  such evidence as irrelevant was not in error nor was it

3  prejudicial to Crown.   McEuin, 328 F.3d at 1034.

4      Further, Crown's argument here that it "had only two

5  choices: (a) put a door on its forklift and increase the risk of

6  loss of life or (b) have an open operator compartment (i.e., on

7  without a door)" is similarly unavailing.   See Def.'s Mem. Supp.

8  Summ. J. 23.   The evidence it presents regarding the entry bar

9  system indicates additional possibilities in preventing operator

10 injuries.   See Id. 12-13.   Crown was not faced with the asserted

11 highly limited, "either-or" choice such that a jury could not

12 find it acted with "willful and conscious disregard of the rights

13 or safety of others."   See Cal. Civ. Code § 3294(c)(1).

14      Finally, ample authority directs that punitive damages

15 present a question of fact for the jury.   "Determinations related

16 to assessment of punitive damages have traditionally been left to

17 the discretion of the jury."   Egan v. Mutual of Omaha Ins. Co.,

18 24 Cal. 3d 809, 821 (1979).   "In the field of strict products

19 liability, the existence of 'malice'–in the sense of 'conscious

20 disregard for the safety of others'-has been held to be a

21 question of fact for the jury to determine."   West v. Johnson &

22 Johnson Products, Inc., 174 Cal. App. 3d 831, 868 (1985).   "The

23 granting or withholding of the award of punitive damages is

24 wholly within the control of the jury . . . ."   Davis v. Hearst,

25 160 Cal. 143, 173 (1911).   "Whether to award punitive damages and

26 the determination of the amount are within the sound discretion

27 of the trier of fact, whether judge or jury."   Restatement

28 (Second) of Torts § 908 cmt. d (1979).

1   The above counsels against a determination that no genuine

2 issue of material fact exists regarding Crown's potential

3 liability for punitive damages.  Accordingly, Defendant's Motion

4 for Partial Summary Judgment of Plaintiff's punitive damages

5 claim is DENIED.

6   IT IS SO ORDERED.

7 Dated: December 20, 2007

8

9   _____

10   MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28